# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANA MICHAEL BERRIER,     )
)
        Petitioner,     )
)
        v.     )     1:13CV302
)
KIERAN J. SHANAHAN, Secretary,     )
N.C. Department of Public Safety,     )
)
        Respondent.     )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed an Answer (Docket Entry 3), a Motion for Summary Judgment (Docket Entry 4), and a Brief in Support of the Motion for Summary Judgment (Docket Entry 6). Petitioner has filed a Response (Docket Entry 9) and Supporting Brief to Response (Docket Entry 10).

### Background

On February 1, 2011, Petitioner was convicted by a jury of trafficking more than four grams but less than fourteen grams of opium, possession with intent to sell or deliver a schedule II substance, and maintaining a dwelling for keeping or selling controlled substances, in case 10 CRS 54301. (Docket Entry 1, §§ 1-6; Docket Entry 6, Ex. 2 at 60-63.) The same day she was sentenced to 70-84 months imprisonment. (*Id.*)

Petitioner filed a direct appeal and the North Carolina Court of Appeals found no error in Petitioner's criminal judgment on December 20, 2011. *State v. Berrier*, No. COA11-707, 2011 WL 6575386, *1 (N.C. App. Dec. 20 2011). On January 17, 2013, Petitioner filed

a Motion for Appropriate Relief ("MAR") in Superior Court, Davidson County; it was denied on February 1, 2013. (Docket Entry 1, §§ 10-11(a); Docket Entry 6, Exs. 5-6.) On February 26, 2013, Petitioner filed a certiorari petition in the Supreme Court of North Carolina; it was dismissed on March 7, 2013. (Docket Entry 6, Ex. 7.) The instant Petition was submitted on April 11, 2013; it was filed on April 12, 2013. (Docket Entry 1.)

## Petitioner's Claims

Petitioner raises five claims: (1) she was deprived of her rights under the Fourth Amendment, (2) she was deprived of her Sixth Amendment right of confrontation and cross-examination because a confidential informant did not testify, (3) her right of due process was violated because the trial court denied her motion to dismiss for the state's failure to disclose exculpatory evidence in the form of a witness, (4) her conviction was obtained by the state's failure to disclose favorable evidence until the second or third day of trial, and (5) ineffective assistance of counsel. (*See id.* § 12.)

## Factual Background

The North Carolina Court of Appeals summarized the facts from Petitioner's case as follows:

> Detective M. Burns of the Davidson County Sheriff's Office Vice/Narcotics Unit was informed by two different subjects, arrested in January and May 2010 for drug charges, that Dana Michael Berrier (Defendant) was selling certain prescription pills. On 12 May 2010, Detective Burns and two other detectives met with a confidential informant who also stated that Defendant was in the business of selling pills. The confidential informant agreed to make a controlled purchase from Defendant's residence. After the controlled purchase, the informant turned over several oxycontin pills to Detective Burns. Based on these facts, Detective Burns requested a

search warrant for Defendant's residence at 190 Beulah Hairston Road in Lexington, North Carolina.

The search warrant was issued, and while searching Defendant's home the detectives saw a small, locked safe and a locked black makeup case in the bathroom. Upon Detective Burns' request for keys to the safe and makeup case, Defendant handed the keys, which she kept on her necklace, to Detective Burns who opened the safe. Inside were one or two pill bottles, along with a locked black makeup case. The makeup case contained more bottles of pills.

A warrant was issued for Defendant's arrest on 7 June 2010. On 2 August 2010, Defendant was indicted on charges of trafficking in opium or heroin by possession, two counts of possession of a controlled substance with the intent to sell or deliver, and maintaining a place to keep a controlled substance. By motion dated 1 December 2010, Defendant moved to suppress the evidence seized from her home and the statements she made to police after the search. On 25 January 2011, Defendant filed a motion to compel release of the identity of the confidential informant who worked with the detectives. After a voir dire hearing outside the presence of the jury, the trial court denied both motions. On 1 February 2011, a Davidson County jury found Defendant guilty of (1) trafficking in more than 4 grams but less than 14 grams of opium, (2) possession with intent to sell or deliver a schedule II controlled substance, and (3) intentionally maintaining a dwelling for keeping and selling controlled substances. Judgment was entered against Defendant the same day, and she was sentenced to 70 to 84 months' imprisonment.

*Berrier*, 2011 WL 6575386, at *1.

## Standard of Review

As a preliminary matter, to receive habeas relief, a petitioner must first exhaust her state court remedies. 28 U.S.C. § 2254(b)(1)(A). The rationale for this requirement is as follows:

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal

> constitutional claims before those claims are presented to the
> federal courts . . . state prisoners must give the state courts one
> full opportunity to resolve any constitutional issues by invoking
> one complete round of the State's established appellate review
> process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 1732 (1999). In a two-tiered appellate system like North Carolina's, "one complete round" includes not only direct appeal to the state's intermediate appellate court, but also the opportunity to petition for discretionary review in the North Carolina Supreme Court. *See id.* Claims not raised in a petition to the state's highest court are non-exhausted and therefore generally procedurally barred from federal habeas review. *Id.* at 848, 119 S.Ct. at 1734. Moreover, failure to exhaust state law remedies will result in the claims being procedurally barred from federal review if, upon return to the state courts, those courts would find that the claims are procedurally barred. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir.1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 25557 (1991)). North Carolina General Statute § 15A-1419 imposes such a mandatory procedural bar for claims that could have been presented on appeal or in a prior motion for appropriate relief. *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).[1] Where the claims below are found to be procedurally barred, this standard will apply.

---

[1] One may overcome a procedural default by showing cause and prejudice arising from the asserted constitutional error. *McCarver v. Lee*, 221 F.3d 583, 591-92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." *Id.* at 591 (citation omitted). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 592 (citation omitted). One may also overcome procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) (citation omitted). This exception applies only to cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the

Additionally, where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 1519 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407, 120 S.Ct. at 1520. "Unreasonable" does not mean just "incorrect" or "erroneous" and the Court must judge the reasonableness from an objective standpoint. *Id.* at 409-11, 120 S.Ct. at 1521-23. State court factual findings are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Where the claims below were denied on their merits, this standard will apply.

---

conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392–94, 124 S.Ct. 1851-52 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 494-96, 106 S.Ct. 2639, 2649-50 (1986)).

## Discussion

Respondent first argues that the Petition is time-barred under 28 U.S.C. § 2244(d). (Docket Entry 6 at 4-13.) Although Respondent's arguments concerning the timeliness of the Petition appear well-taken, they involve a number of complicated and somewhat unsettled issues. The other grounds set out in Respondent's summary judgment brief present no such difficulties. Moreover, the limitation period in § 2244(d) is not jurisdictional, so the Court need not consider it before proceeding to other arguments. *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002). Given all of these circumstances, the Court will not address the time bar issue further, but instead will analyze Respondent's other summary judgment arguments.

### *Claim One*

Petitioner asserts a deprivation of her Fourth Amendment rights because the trial court denied her motion to suppress a search warrant. (Docket Entry 1, § 12, Ground One; Docket Entry 10 at 3-4.) However, the Court is prohibited from considering this claim and, even if it were not, the claim fails on the merits. More specifically, Petitioner raised this Fourth Amendment argument with the trial court, where it was denied, and then attempted to raise it again on direct appeal. (Docket Entry 6, Exs. 3 and 17 at 114-119, 184-238.) The appellate court concluded that this issue had not been preserved at trial and that it could therefore only review the issue for plain error on appeal if plain error was specifically argued. *See Berrier*, 2011 WL 6575386, at *2. Because Petitioner's appellate counsel failed to argue plain error on appeal, the appellate court declined to review this issue on the merits. *Id.* Petitioner did not seek further review on direct appeal by way of a petition for discretionary

106 S.Ct. at 2583. These same standards apply to claims that appellate counsel provided ineffective assistance of counsel. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008). Also, appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 3312-14 (1983); *see also Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points constitutes an important part of effective appellate advocacy. *Jones*, 463 U.S. at 751-52, 103 S.Ct. at 3313. Prejudice can arise if "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (*quoting Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

Here, Petitioner's Fourth Amendment claims regarding the search warrant were not meritorious and therefore appellate counsel was under no obligation to raise them. A controlled purchase of drugs by an informant under the supervision of an officer—as was the case here—is sufficient to establish probable cause to search the premises where the purchase took place.[4] Petitioner suffered no prejudice from the failure to preserve the issue for de novo review or from appellate counsel's failure to seek plain error review.

Petitioner also asserts that the trial court's decision not to release the identity of a confidential informant in the case entitles her to federal habeas relief. (Docket Entry 1, § 12,

---

[4] *See United States v. Stearn*, 597 F.3d 540, 556 (3d Cir. 2010) (finding probable cause when informant's tip was corroborated by his subsequent controlled buy); *U.S. v. Freeman*, No. 1:09–cr–55, 2010 WL 1957303, *4 (E.D. Tenn. May 13, 2010) (probable cause for warrant present where detective "conduct[ed] a controlled buy, which took place in Defendant's home" because "[a]fter the controlled buy was completed, it was reasonable for Detective . . . to anticipate that evidence of drug sales would be present in the home, especially given that the controlled buy occurred shortly before he completed the affidavit and procured the warrant").

review to the state high court, but did raise this issue again in a post-conviction MAR, which was also denied. (Docket Entry 6, Exs. 5 and 6.) Petitioner's Fourth Amendment search and seizure claim is thus barred from federal habeas review, as she had an opportunity for full and fair[2] litigation of her Fourth Amendment claim. *See Stone v. Powell*, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 3046 (1976).[3]

One point deserves additional consideration. In her MAR, Petitioner asserted that trial and possibly appellate counsel mishandled Fourth Amendment issues related to the warrant and that she therefore suffered from constitutionally ineffective assistance of counsel. (Docket Entry 6, Ex. 5.) It is true that a Fourth Amendment claim is not precluded by *Stone v. Powell* when it is raised in the context of a Sixth Amendment ineffective assistance claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 382-83, 106 S.Ct. 2574, 2587 (1986). To prevail on an ineffective assistance claim for an alleged Fourth Amendment violation, a petitioner must prove that her Fourth Amendment claim is meritorious and that there is a reasonable probability of a different verdict absent the excludable evidence. *See id.* at 375,

---

[2] The United States Court of Appeals for the Fourth Circuit has previously recognized that North Carolina's statutory scheme governing the litigation of motions to suppress, *see* N.C.G.S. §§ 15A–971-980, establishes "an opportunity for the full and fair litigation" of Fourth Amendment claims. *Sallie v. State of North Carolina*, 587 F.2d 636, 639 (4th Cir. 1978).

[3] *See also Wright v. West*, 505 U.S. 277, 293, 112 S.Ct. 2482, 2491 (1992) ("We have also held . . . that claims under *Mapp* [evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the state courts have provided a full and fair opportunity to litigate them at trial or on direct review."); *Mueller v. Angelone*, 181 F.3d 557, 570 n. 8 (4th Cir. 1999) (acknowledging *Stone v. Powell* rule that federal habeas courts decline to review state court Fourth Amendment determinations); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has an opportunity to litigate those claims in state court."); *Edwards v. Jackson*, No. 3:08–cv–584–RJC, 2012 WL 137413, *4 (W.D.N.C. Jan. 18, 2012) ("Petitioner was afforded a full and fair opportunity to raise any Fourth Amendment search and seizure or unlawful arrest claims he wished to raise at trial and on appeal, but he did not do so. Therefore, his current Fourth Amendment search and seizure claim and unlawful arrest claims are both barred from federal habeas review.").

Ground One; Docket Entry 10 at 3-4.) Petitioner never mentioned this as a Fourth Amendment claim on direct appeal and she did not specifically address it in her MAR. If Petitioner tried to raise the issue in a MAR now, it would be procedurally barred because Petitioner could have raised the issue on direct appeal or in her prior MAR. It is true that constitutionally ineffective assistance of counsel amounts to cause to excuse a procedurally defaulted claim. *See Coleman*, 501 U.S. at 753-54, 111 S.Ct. at 2567; *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986). Nevertheless, while Petitioner does contend or imply that appellate counsel was ineffective for other reasons, addressed herein, Petitioner does not contend that appellate counsel was ineffective for failing to raise the issue of the confidential informant on appeal. Nor does Petitioner contend that it would be a fundamental miscarriage of justice to fail to review this claim. Petitioner has thus failed to overcome the procedural default of this claim.

This claim is also precluded by *Stone v. Powell*. This is because a trial court's refusal to disclose the identity of a confidential informant does not deprive a defendant of a full and fair opportunity to litigate a Fourth Amendment search and seizure claim in state court.[5] Thus, even setting aside the issue of procedural default, Petitioner's assertion that she is entitled to federal habeas relief because the trial court would not order the release of the identity of a confidential informant is not reviewable by this Court.

---

[5] *See, e.g., United States ex rel. Petillo v. New Jersey*, 562 F.2d 903, 907 (3rd Cir. 1977); *Ortiz v. Ollison*, 2009 WL 4281989, at *6-9 (C.D. Cal. Sept. 23, 2009); *see also McCray v. Illinois*, 386 U.S. 300, 312-13, 87 S.Ct. 1056 (1967) (the Constitution does not compel the states to disclose an informer's identity where the "officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust"); *United States v. Napier*, 436 F.3d 1133, 1134–36 (9th Cir. 2006) (rejecting claim that trial court unduly hampered defendant's ability to challenge a search warrant when the court sealed portions of the warrant identifying the confidential informant).

Finally, even if the Court were to consider this matter further, it would fail on the merits. "[W]hen the informant is an active participant in the transactions at issue instead of just a mere tipster, the failure to require disclosure of the informant's identity is more likely to amount to error." *United States v. Blevins*, 960 F.2d 1252, 1258 (4th Cir. 1992); *see also United States v. Gray*, 47 F.3d 1359, 1364-65 (4th Cir. 1995) (noting "the well settled principle that the government is permitted to withhold the identity of a confidential informant when the informant was used only for the limited purpose of obtaining a search warrant"). Here, Petitioner has not pointed to any evidence that the informant in this case was used for any reason other than providing information to support the search warrant. Nor does it appear that Petitioner was charged with the illegal sale of drugs to the informant. (*See, e.g.*, Docket Entry 6, Ex. 17 at 235-238.) *See also Berrier*, 2011 WL 6575386, *3 (concluding that "Defendant was never charged in relation to these events"). The undersigned has been presented with no reason, and has found none, to conclude that it was error for the trial court to refuse to disclose the identity of the informant.

### Claim Two

Petitioner next asserts that she was deprived of her Sixth Amendment right of confrontation and cross-examination because the confidential informant did not testify. (Docket Entry 1, § 12, Ground Two.) Petitioner essentially made this argument on direct appeal and it was denied by the North Carolina Court of Appeals. *Berrier*, 2011 WL 6575386, *3. Petitioner did not seek further review on this issue with the Supreme Court of North Carolina during her direct appeal, nor did she raise her Sixth Amendment claim in her MAR. (Docket Entry 6, Exs. 5-6.) Petitioner has therefore failed to exhaust this claim and it

would be futile to attempt to do so now. More specifically, Petitioner cannot now pursue this issue further with the Supreme Court of North Carolina as the time to do so has expired. *See* N.C. R. App. P. Rules 14(a) and 15(b) and Rule 32(b). Likewise, it is too late to raise this issue in a MAR because if Petitioner returned to the state courts to exhaust the claim through a MAR, she would face mandatory imposition of the procedural bar in N.C. Gen. Stat. § 15A–1419(a)(1), (a)(3), and (b). Consequently, where, as here, a habeas petitioner would find her nonexhausted claim subject to a mandatory procedural bar if she returned to state court for exhaustion, the claim is barred from federal habeas review. Petitioner has neither pled nor established cause and prejudice, nor has Petitioner pled or established that it would be a fundamental miscarriage of justice to refrain from considering this claim further. In short, this Court is barred from reviewing this claim.

However, even if this claim were not procedurally barred, it would fail on its merits. In addressing this claim, the North Carolina Court of Appeals concluded that:

> Defendant contends that the trial court erred in allowing testimony that was both inadmissible hearsay and violative of her Sixth Amendment right to confrontation. We disagree.
>
> Pursuant to N.C. Gen. Stat. § 8C–1, Rule 801(c) (2009), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Defendant argues that information communicated by the confidential informant in this case is hearsay, because "[a]ny statements that tend to connect Ms. Berrier to a sale of opiates necessarily address the truth of the matter asserted." Because the contested testimony contains no verbal statements from the confidential informant, Defendant cites numerous cases where a declarant's conduct was found to be a nonverbal "statement" for the purposes of hearsay analysis.

The only conduct of the confidential informant, as described by Detective Burns, which could constitute a statement is the act of returning from the Defendant's residence after the controlled purchase and turning over five pills to the detectives. However, testimony regarding this interaction was not introduced to prove the truth of the matter asserted—namely that Defendant sold the informant illegal drugs. In fact, Defendant was never charged in relation to these events. The purpose of the testimony regarding this controlled purchase was to establish Detective Burns' belief that controlled substances were sold by Defendant at her residence. Detective Burns' belief is relevant because he was the affiant who applied for the search warrant for Defendant's residence. The testimony was not being offered for its truth, and so is not hearsay; accordingly, Defendant's arguments are overruled.

*Berrier*, 2011 WL 6575386, *3.

The North Carolina Court of Appeals was correct in its holding for the reasons set forth above even without regard to AEDPA's deferential standard of review. *See Crawford v. Washington*, 541 U.S. 36, 59, n.9, 124 S.Ct. 1354, 1369 (2004) (declining to "bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"). And, under the AEDPA standard, the North Carolina Court of Appeals resolution of this matter is neither contrary to nor an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court, nor was it based on an unreasonable determination of the facts, in light of the evidence presented in the state court proceedings.

### *Claims Three and Four*

Petitioner next asserts that her right to due process was violated when the trial court denied her motion to dismiss based upon the state's alleged failure to disclose exculpatory evidence. (Docket Entry 1, § 12, Grounds 3 and 4.) Petitioner also argues that "there was

insufficient evidence to charge and convict [her] of trafficking." (Docket Entry 10 at 5-6.) Because these claims overlap, they are best considered together.

If Petitioner is simply rephrasing her second ground for relief, it should be denied for the reasons and authorities set forth above. As for Petitioner's *Brady* claim, Petitioner did raise the issue in her MAR, where it was summarily denied (Docket Entry 6, Exs. 5-6). Petitioner's *Brady* claim lacks merit and the MAR state court did not err, much less act contrary to or unreasonably apply clearly established federal law, in denying this claim.

Specifically, Petitioner asserted at trial and asserts anew that the state withheld from her the fact that during or immediately after the execution of the warrant a Detective, Burns, met and conversed with Brian Gaither, an individual whose name was on one or more bottles of prescription drugs found in Petitioner's home. (Docket Entry 6, Ex. 19 at 128, 330, 402-06, 410-11; Docket Entry 10 at 7.) Detective Burns testified that "during the end" of his investigation Gaither pulled up in a vehicle. (*Id.* at 410.) Detective Burns identified himself and asked if he could help. (*Id.* at 411.) Gaither said he was there to get his pills and Detective Burns said "those pills were seized for further investigation." (*Id.* at 410-11.) Detective Burns testified that he told Gaither that "they were evidence that he would have to get a disposition from a judge before those pills could be returned if and when they could be returned." (*Id.* at 411.) The trial court denied Petitioner's motion to dismiss due to the alleged *Brady* violation, but required Detective Burns to reduce to writing his encounter with Gaither, which he did.[6] (*Id.* at 406-08.) Petitioner thus had ample opportunity to make use of Detective Burn's statement at trial. (*Id.* at 408, 410.)

---

[6] The statements reads as follows:

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The prosecutor's duty to disclose such exculpatory evidence is applicable even in the absence of a request for the information by the accused. *United States v. Agurs,* 427 U.S. 97, 110-11, 96 S.Ct. 2392, 2400-01 (1976). *Brady* encompasses evidence known to police investigators, even if it is not known to the prosecutor. *Kyles v. Whitley,* 514 U.S. 419, 438, 115 S.Ct. 155, 1568 (1995).

To successfully show a *Brady* violation, a petitioner must establish three things. First, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948 (1999). Second, the evidence must have been willfully or inadvertently suppressed by the

---

On May 25, 2010, I executed a search warrant at 190 Beullah Hairston Rd, Lexington, NC.

At some point near the end of execution, I was outside the residence and a white male unknown to me drove up to the residence. I do not recall what he was driving. I do not recall if anyone else was with him. I walked to [the] vehicle and identified myself and asked him "Can I help you?" He identified himself by name. I do not recall if he said "Brandon" or "Brandon Gaither." He said he "needed to get his pills." I then recalled that a bottle seized had the name of Brandon Gaither printed on a label affixed to it. I told him that "his pills were seized pending an investigation." He asked how to get them back. I told him that once evidence was ordered to be disposed by a judge he may be able to get his pills back. He left. I am fairly confident we had all but concluded our activities at 190 Beulah Hairston Rd when this conversation took place. It is possible that I was the only officer remaining at the scene but I am not certain about this.

(Docket Entry 1 at 22.)

14

state. *Id.* at 282, 119 S.Ct. at 1948; *see also United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001). Finally, prejudice against a petitioner must have resulted (*i.e.*, the evidence at issue was "material"). *Strickler*, 527 U.S. at 282, 119 S.Ct. at 1948; *see also Stokes*, 261 F.3d at 502. Evidence is considered "material" and thus subject to *Brady* disclosure "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985).

In this case, the state court did not err, much less act contrary to or unreasonably apply clearly established federal law, when it concluded there had been no *Brady* violation. Petitioner was provided Detective Burns' statement regarding Brandon Gaither after the state's case in chief. Petitioner's counsel then examined Detective Burn's on this issue in the presence of the jury. Thus, it does not appear to the undersigned that, even assuming this evidence is favorable to Petitioner, it was suppressed by the state. *See United States v. Russell*, 971 F.2d 1098, 1112 (4th Cir. 1992) (concluding that there is no due process violation "[a]s long as evidence is disclosed before it is too late for the defendant to make effective use of it"); *see also United States v. Jude*, 29 Fed. App'x 116, at *1 (4th Cir. 2002) ("Defense counsel were granted an opportunity to review the material, and there is no indication that earlier production would have been of measurable benefit. Accordingly, we find no violation resulting from the delivery of the documents on the day of trial."). And, even assuming that Burns' exchange with Gaither was favorable to Petitioner and its disclosure during trial constitutes suppression by the state, there is no reason to believe that had it been disclosed earlier the outcome of Petitioner's criminal proceedings would have been different. The

evidence in this case against Petitioner is strong and includes Petitioner's admission that she

sold drugs, controlled purchases of drugs from Petitioner's residence, and a locked safe

containing drugs whose key Petitioner wore around her neck. (Docket Entry 6, Ex. 17 at

247-262, 265-66, 287-96.) This argument is lacking in merit.

Regarding Petitioner's sufficiency of the evidence claim, the North Carolina Court of

Appeals rejected this argument on direct appeal:

> Defendant argues in her motion to dismiss that the State failed
> to produce sufficient evidence to support all elements of the
> charged crimes. With regard to the charges of trafficking and
> maintaining a dwelling for the purposes of drug activity,
> Defendant asserts that the State failed to prove that she
> controlled the drugs found at the home, and as a consequence
> failed to show constructive possession. This argument is
> without merit. The evidence is uncontroverted that Defendant
> wore a chain around her neck with the keys to the locked boxes
> where most of the drugs were kept. It is irrelevant that the
> names of others were on the prescription bottles because
> Defendant possessed the keys, she clearly controlled access to
> the drugs. This evidence of control also supports a finding that
> Defendant had constructive possession over the drugs, as
> "[c]onstructive possession exists when a person . . . has the
> intent and capability to maintain control and dominion over a
> controlled substance." *State v. Williams*, 307 N.C. 452, 455, 298
> S.E.2d 372, 374 (1983).
>
> Defendant also argues that the State presented insufficient
> evidence of her intent to sell drugs, as required for the guilt of
> possession with intent to sell and deliver. However, the State
> presented Detective Burns' testimony regarding Defendant's
> response to the question of how many pills per month she sells.
> That evidence is sufficient to establish the element of intent to
> sell. Defendant's argument is overruled.

*Berrier*, 2011 WL 6575386, at *3-4. Petitioner did not raise this issue by way of a petition for

discretionary review to the Supreme Court of North Carolina, nor did Petitioner address it

specifically in a post-conviction MAR. Petitioner sets forth no rationale for this procedural

default which would overcome it. Consequently, Petitioner cannot receive habeas relief by way of this claim. And, even were it not procedurally barred, this claim fails on its merits. This is true even without resort to AEDPA's deferential standard of review and is certainly the case in light of the standard. A federal court reviewing a habeas claim of insufficient evidence must determine whether, after viewing the evidence in the light most favorable to the state, any rational trier-of-fact could find the essential elements of the crime beyond a reasonable doubt. *See Wright v. West*, 505 U.S. 277, 284, 112 S.Ct. 2482, 2485-86 (1992); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Here, for the reasons set forth above, and elsewhere in this Recommendation, the prosecution presented sufficient evidence at Petitioner's trial to satisfy the due process requirements for sufficiency of the evidence under clearly established U.S. Supreme Court law.

### Ground Five

In Ground Five, Petitioner alleges that she received ineffective assistance of counsel. (Docket Entry 1, § 12, Ground Five.) The essence of this claim is that her trial counsel had an impermissible conflict of interest regarding another client, Mark Lankford, and waited until the last minute to inform Petitioner that he could not represent her as a result. (*Id.*) Petitioner also claims that her trial counsel misadvised her. (*Id.*) Petitioner claims further that her trial attorney "did not offer [her] the district attorney plea agreement in a timely manner to the extent that the plea was taken off the table." (Docket Entry 10 at 8.) Her appellate counsel, Petitioner continues, was constitutionally ineffective for failing to raise these issues on appeal. (*Id.*) Finally, Petitioner alleged that the trial court erred by declining to let her fire her attorney and either hire a new attorney or represent herself. (*Id.* at 10.)

Petitioner raised ineffective assistance of trial and appellate counsel in her MAR and it was summarily denied by the MAR Court. (Docket Entry 6, Exs. 5-6.) Upon review, and as detailed below, the state court did not err, much less act contrary to or unreasonably apply clearly established federal law, in its summary denial of Petitioner's ineffective assistance of counsel claims. As noted, to prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he suffered prejudice as result. *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068 (1984). Unsupported, conclusory allegations do not entitle Petitioner to even a hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). Prejudice requires a showing of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have differed. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. As explained below, none of Petitioner's permutations of this claim have merit.

### a. Conflict of Interest

First, any claim that Petitioner's trial counsel was constitutionally ineffective for operating under a conflict of interest during the time he represented her must fail. Even where defense counsel is involved in an alleged conflict, a petitioner must show that representation of counsel is adversely affected by an actual conflict of interest. *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991); *see Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 535 U.S. 162, 172 n.5 (2002). Courts have held that to show an adverse effect, a petitioner must

demonstrate that some plausible defense strategy or tactic might have been pursued, but was not because of the conflict. *See Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996) (citing cases); *see also Patterson v. Virginia Dept. of Corrections*, No. 96–7438, 1998 WL 957464 (4th Cir. Sept. 22, 1998) (unpublished) (adopting this approach). If a petitioner makes this showing, prejudice is then presumed. *Mickens*, 535 U.S. at 172 n.5, 535 U.S. at 172, n.5.

Here, the transcript reveals that the day of trial—before all of the pretrial motions had been addressed, but after the jury had been selected and empaneled—Petitioner's trial attorney, Corey Buggs, moved to withdraw as counsel after being informed by Petitioner that he was relieved of his duties. (Docket Entry 6, Ex. 17 at 214.) Petitioner addressed the court and asserted that Mr. Buggs had a conflict of interest. (*Id.* at 215.) The purported conflict of interest involved a man named "Lankford," who was also a client of Mr. Buggs. (*Id.* at 216-17.) Apparently, Petitioner previously made a statement to authorities regarding Lankford's relationship to some stolen lawn equipment. (Docket Entry 1 at 23, Docket Entry 6, Ex. 17 at 216-17.) The state indicated that it had "no knowledge of Mr. Lankford ever having given any information about [Petitioner]," that Mr. Lankford was not a witness in the case, and that the state had no knowledge of any information "that would create any sort of conflict for Mr. Bugs." (Docket Entry 6, Ex. 17 at 216-17.) Mr. Bugs stated to the court that he had only heard about Lankford's alleged statements against Petitioner the prior day when told by Petitioner herself. (*Id.*) The trial court indicated that Mr. Bugs had spoken to the state bar about the potential conflict of interest, which had determined that there was no such conflict. (*Id.* at 215.) Petitioner responded, stating that "They said it wasn't a

conflict if his client didn't sign a statement on me pertaining to this case. I have been told by several people his client did sign statements on me." (*Id.* at 216.)

Petitioner has failed to establish any actual conflict that affected trial counsel's performance. No statement by Lankford was ever presented to the jury, is in the record, or is contained in or attached to the pleadings. The only evidence on record in support of her contention that one of her trial counsel's other clients was making statements against her is her vague and conclusory assertion that several unnamed persons told her as much. This is insufficient to establish an actual conflict of interest. Moreover, even if there was an actual conflict of interest on the record, and there is not, there is no reason to believe it adversely affected trial counsel's performance. Petitioner points to no particular action of trial counsel but rather asserts that "I feel as if my attorney did not do his best to represent me and in fact hurt me more than help me because of our conflict." (Docket Entry 1 at 24.) This vague and conclusory statement is insufficient to establish an adverse effect even if trial counsel operated under a conflict of interest. And, as explained elsewhere herein, Petitioner's other assertions of ineffective assistance of trial counsel are unpersuasive.

### b. Misadvice

Petitioner also states that trial counsel was constitutionally ineffective because he "repeatedly misadvised [her]." (Docket Entry 1 at 23; Docket Entry 10 at 8.) While the exact scope of what Petitioner considers to be misadvice from trial counsel is not entirely clear,[7] it is clear from the Response (Docket Entry 10 at 8) that Petitioner complains of the manner in which trial counsel handled plea negotiations with the state. More specifically, on

---

[7] If Petitioner is arguing that trial counsel misadvised her in regards to the purported conflict of interest involving Lankford, this argument fails for the reasons set forth above.

the day of trial, while the trial court was addressing various pretrial motions, including the conflict of interest issue addressed above and the motion for a continuance addressed below, Petitioner stated that:

> He [trial counsel] said he was going to speak with the DA and try to get the DA to give me a better plea than two years. I didn't hear from him anymore and he says he called me on Sunday. I don't remember. My intentions was to come in this courtroom on Monday and tell him I was going to take the two year plea because I have three kids. My three year old – my husband's health is not good enough to take care of her. (Defendant crying.) I was a half hour late for court because I couldn't get her ready. She has strep throat. You [trial court] gave me a hundred thousand dollar bond. The DA says because I was late the plea went from two years to three years. I told him I got in here and talked to you, tell him I will take the three years. I'm scared to go to trial. The DA said "No. We are not doing it. All bets are off. We are going to trial. [Mr. Buggs] calls me last night and offers me another plea of five years if I plead guilty but he says you don't have to take it until after the motion, then you can decide. That is what he told me last night. All right. Then I get here this morning, he tells me, "Oh, I'm sorry, I misunderstood. You have to take the plea now, you can't do the motion and take the plea. I was once again misadvised.
>
> This is a nightmare to me and I think I deserve to have, to get better counsel than what I have.

(Docket Entry 6, Ex. 17 at 215-16.)

During this hearing, both trial counsel and the state responded to Petitioner's allegations. (*Id.* at 218-220.) Petitioner's trial counsel indicated that he had spoken with the state the previous day about a potential plea. (*Id.* at 218.) Petitioner's counsel asserted that he understood the state as offering Petitioner a plea regardless of whether she proceeded to a hearing on various pre-trial motions, including a motion to suppress. (*Id.*) He therefore communicated this to Petitioner later that same day. (*Id.*) However, that evening, the state

contacted Petitioner's counsel and clarified that it would only be offering Petitioner a plea agreement if she opted not to proceed on her pretrial motions. (*Id.* at 218-19.) After relating this to the trial court, Petitioner's trial counsel then noted that "I guess that she has a decision to make whether or not she wants to enter a plea or does she want to proceed on." (*Id.* at 219.)

The state prosecutor, in turn, agreed that the previous day he had indicated to Petitioner's trial counsel that he would be willing to offer a plea to the lower class of trafficking, which would be 70 to 84 months imprisonment, but not five years as alleged by Petitioner. (*Id.* at 219.) However, the state prosecutor continued, that evening he clarified to Petitioner's trial counsel that any plea agreement was predicated upon Petitioner opting not to pursue her motions to suppress. (*Id.*) The state prosecutor also indicated that if Petitioner "Pled this morning I would let her plead to the lower class of trafficking." (*Id.*) Upon hearing this exchange, the trial court called a five minute recess so that Petitioner's trial counsel could explain to Petitioner what had transpired. (*Id.* at 220.) After the recess, Petitioner's trial counsel indicated that Petitioner "would have evidence on the suppression of the search warrant." (*Id.*)

In light of the above, the only potential misadvice on the record was the miscommunication described above. However, as explained, it was clearly resolved prior to the hearing of Petitioner's motions to suppress. Thus, nothing suggests that Petitioner's trial counsel mishandled plea negotiations with the state in such a way as to hamper Petitioner's ability to accept a plea bargain offered by the state. While the block quote set forth above shows Petitioner referencing another plea offer, Petitioner states further in that same block

quote that it was her tardy appearance at Court, and not the conduct of trial counsel, that led to the State's retraction of the offer. Nothing suggests that trial counsel mishandled or misadvised Petitioner regarding this plea offer or any plea offer.

Beyond this, the Petition (Docket Entry 1) and Response (Docket Entry 10) contain only vague and conclusory allegations of misadvice but no additional factual allegations or evidence in support thereof. Consequently, Petitioner has failed to support her contention that trial counsel "did not offer [her] the district attorney plea agreement in a timely manner to the extent that the plea was taken off the table." (Docket Entry 10 at 8.) Petitioner therefore cannot demonstrate either prong of *Strickland* here. *See Nickerson*, 971 F.2d at 1136.

### c. Right to Counsel

Petitioner next asserts that the trial court erred by denying her the "right to fire her trial attorney and represent herself or hire other legal counsel." (Docket Entry 10 at 10.) Petitioner did not raise this issue in her state proceedings and it is thus procedurally barred. Petitioner sets forth no rationale for this procedural default which would overcome it. Consequently, Petitioner cannot receive habeas relief by way of this claim

However, the claim also fails on the merits. The Sixth Amendment right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S.Ct. 2557, 2561 (2006) (citation omitted). If a court wrongly denies a defendant's right to counsel of choice, a Sixth Amendment violation has occurred, and courts need not conduct an ineffective assistance of counsel inquiry. *Id.* at 148, 126 S.Ct. at 2563. Further, the "erroneous deprivation of the right to counsel of choice . . . 'qualifies as structural error.'" *Id.* at 150,

126 S.Ct. at 2564 (*quoting Sullivan v. Louisiana*, 508 U.S. 275, 282, 113 S.Ct. 2078, 2083 (1993)) (additional internal quotation marks omitted). However, the right to counsel of choice is not absolute and "'is circumscribed in several important respects.'" *Id.* at 144, 126 S.Ct. at 2561 (*quoting Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697 (1988)). In fact "a trial court[] [has] wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Id.* at 152, 126 S.Ct. at 2565-66 (citations omitted).

Thus, despite the fact that constitutional rights may be implicated, trial courts are accorded wide discretion in determining whether or not to grant continuances. *Sampley v. Att'y. Gen. of N.C.*, 786 F.2d 610, 613 (4th Cir. 1986). "Indeed, the constitutional right is probably best stated as a limit on trial court discretion: that discretion only exceeds its constitutional bounds when it is exercised to deny a continuance on the basis of an 'unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *Id.* (quoting *Morris v. Sloppy*, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 1616-17 (1983)). A reviewing court must look to the circumstances and facts of each case, particularly the reasons presented to the trial court at the time the request is denied. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 850 (1964). "Obviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial or by objecting that counsel then retained or assigned is not presently counsel of his choice." *Sampley*, 786 F.2d at 613 (internal citations omitted).

Here, as an initial matter, after Petitioner expressed her wish to dismiss her trial counsel the day of trial, the trial court asked Petitioner "Do you want to represent yourself?" to which Petitioner responded, "No." (Docket Entry 6, Ex. 17 at 220.) Consequently, any argument that she was denied her right to self-representation must fail. Moreover, Petitioner has shown, and the undersigned has found, nothing to demonstrate an abuse of discretion by the trial judge regarding the denial of her motion for a continuance. Petitioner essentially sought to change attorneys on the day of trial, after the jury had already been selected, based in large part on unsupported allegations of a conflict of interest. The trial court thoroughly investigated the issue and did not abuse its discretion in denying a continuance. *See, e.g.*, *United States v. Corporan–Cuevas*, 35 F.3d 953, 956 (4th Cir. 1994) (noting that proper inquiry involved considering the timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense and observing that motion to continue to substitute counsel "made on the first day of trial . . . would clearly be untimely under all but the most exigent circumstances").

In further support of her claim, Petitioner points to a statement on the record where her trial counsel sought to be relieved because he did not feel comfortable representing Petitioner any longer. (Docket Entry 10 at 9 (citing Docket Entry 6, Ex. 17 at 217-18.) ("It would be my preference to let me stand down. I will remain on as standby counsel, but I don't feel comfortable going forward knowing she has put forth in the courtroom things that are not true.")) Petitioner appears to contend that the fact that her attorney did not "feel comfortable" representing her amounted to deprivation of a right to counsel or to

infective assistance of counsel. The record does not bear this out. It shows that, after hearing from Petitioner, her attorney, and the state, the trial court implicitly rejected the possibility of a breakdown in the attorney-client relationship or that the issues between Petitioner and her trial counsel would deprive her of an adequate defense. The Sixth Amendment does not guarantee a criminal defendant a "meaningful relationship" with her attorney. *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617 (1983). And "no Supreme Court case has held that 'the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust.'" *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc)). This claim, like all the claims set forth above, lacks merit. Consequently, the undersigned concludes that the instant Petition should be denied, judgment entered, and this case dismissed.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be **GRANTED**, that the Petition (Docket Entry 1) be **DENIED**, and that Judgment be entered dismissing this action.

Joe L. Webster
**United States Magistrate Judge**

Durham, North Carolina
January 13, 2014

26